**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| RONALD E. NABORS | ) | Case No.: 1:11-CV-273 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO A/K/A | ) | |
| WELLS FARGO BANK, | ) | |
| NATIONAL ASSOCIATION AND | ) | |
| WELLS FARGO INVESTMENTS, LLC | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ronald E. Nabors ("Plaintiff" or "Mr. Nabors"), by counsel and in response in opposition to Defendant Wells Fargo's a/k/a Wells Fargo Bank, National Association and Wells Fargo Investments, LLC (hereinafter identified as "Defendant" or Wells Fargo") Motion for Summary Judgment and Brief Supporting Its Motion for Summary Judgment, states as follows:

**I.     INTRODUCTION.**

Mr. Nabors has brought this action against his former employer, Wells Fargo, to redress deprivation of his civil rights and to remedy Wells Fargo's discrimination and retaliation against him on the basis of his race/color, religion/religious beliefs, sex, age and his disability/perceived disability/record of impairment, and to remedy Wells Fargo's retaliation relative to his wages, terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, including the Americans

with Disabilities Act Amendments Act of 2008 (collectively referred to herein as "ADAAA").[1]

## II.    SUMMARY JUDGMENT STANDARD.[2]

## III.   MR. NABORS CAN CONCURRENTLY MAINTAIN HIS AGE CLAIM AND OTHER CLAIMS.[3]

Wells Fargo argues as a threshold matter that: i) Mr. Nabors "must abandon either his age

discrimination claim, or his other claims, because he cannot pursue both an age claim and a

claim based on any other discrimination concurrently"; and ii) Mr. Nabors "must show that age

was the _only_ factor taken into account by Wells Fargo." (Def.'s Br., p. 1). However, Wells

---

[1] Wells Fargo, in its Motion for Summary Judgment and supporting brief, presented arguments collectively contending that summary judgment is appropriate with respect to all of Mr. Nabors' claims. However, as set forth herein and in Mr. Nabors' Appendix attached hereto, the evidence viewed in the light most favorable to Mr. Nabors establishes that genuine issues of material fact exist as relate to each of his respective claims, requiring a trial in this case. As such, Wells Fargo's Motion for Summary Judgment must be denied with respect to all of Mr. Nabors' Title VII, Section 1981, ADEA and ADAAA claims.

[2] Summary judgment may be granted only if there are no disputed genuine issues of material fact. _Snyder v. Livingston,_ 2012 U.S. Dist. LEXIS 59193, *17 (N.D. Ind., April 27, 2012) (citing _Payne v. Pauley_, 337 F.3d 767, 770 (7th Cir. 2003)). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." _Id_. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." _Kodish v. Oakbrook Terrace Fire Prot. Dist_., 604 F.3d 490, 507 (7th Cir. 2010) (quoting _Waldridge v. Am. Hoechst Corp_., 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment _may not_ be granted. _Payne_, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." _Id_. Although summary judgment is an effective tool for a district court to manage its caseload, a court must avoid the temptation to use summary judgment "as an abbreviated trial." _American Int'l Adjustment Co. v. Galvin et al_., 86 F.3d 1455, 1459 (7th Cir. 1996) (citing _Door Systems, Inc._, v. Pro-Line Door Systems, Inc., 83 F.3d 169, 172 (7th Cir. 1996).

On certain occasions, the Seventh Circuit has suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. _See e.g., Sarsha v. Sears, Roebuck & Co_., 3 F.3d 1035, 1038 (7th Cir. 1993); _Holland v. Jefferson Nat'l Life Ins. Co_., 883 F.2d 1307, 1312 (7th Cir. 1989). The language implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent. _Holland_, 883 F.2d at 1312. Moreover, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." _Wallace v. SMC Pneumatics, Inc_., 103 F.3d 1394, 1396 (7th Cir. 1997).

[3] To prevail on an ADEA claim, a plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." _Gross v. FBL Fin. Servs., Inc_., 557 U.S. 167, 176 (2009).  Mr. Nabors must show that his age "actually played a role in [Wells Fargo's decision-making] process and had a determinative influence on the outcome." _Hemsworth v. Quotesmith.com, Inc_., 476 F.3d 487, 490 (7th Cir. 2007) (quoting _Schuster v. Lucent Techs., Inc._, 327 F.3d 569, 573 (7th Cir. 2003) and _Reeves v. Sanderson Plumbing Prods., Inc.,_ 530 U.S. 133, 141 (2000)).

Fargo's reliance on its cited district court cases outside of the Seventh Circuit is misguided, at best, because in the Seventh Circuit, "but for" *does not* equate to "only" or "sole" factor.[4] Thus, despite Wells Fargo's argument to the contrary, it is clear that Mr. Nabors can concurrently maintain his age claim and other claims at this summary judgment stage.[5]

## IV. THIS COURT MAY CONSIDER FACTS AND CLAIMS PREDATING JANUARY 20, 2010.[6]

Wells Fargo argues that this Court can only consider alleged discrete discriminatory events occurring on or after January 21, 2010.[7]  (Def.'s Br., p. 2) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (some citations omitted).  However, in *Morgan*, the Supreme Court opined that the existence of past acts and the employee's prior knowledge of their occurrence *does not* bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  *Morgan*, 536 U.S. at 113.  Also, Title VII does not bar an employee from using the prior

---

[4] *See Girten v. Town of Schererville*, 819 F.Supp.2d 786, 803 (N.D. Ind., May 2, 2011) ("[plaintiff's] diabetes *need not be the sole cause* of his termination to be the *but-for* cause") (emphasis added) (citing *United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010) (defining a "but for" cause as a "necessary condition"); *United States v. Dyer*, 216 F.3d 568, 570 (7th Cir. 2000) ("'But for' causation is a very weak sense of causation" and "[i]t is poles apart from 'sole cause'"); *see also Fairley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999) (finding that under the ADA's "'but-for' liability standard…a disability [must] be shown to be a *determinative*, *rather than the sole*, decision-making factor.") (emphasis added); *Jones v. Oklahoma City Schools*, 617 F.3d 1273, 1277-78 (10th Cir. 2010) (same under ADEA) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (but-for causation standard does "not require [] [plaintiffs] to show that age was the sole motivating factor in the employment decision") (quotations omitted).

[5] Wells Fargo argues in a footnote that "the Seventh Circuit also requires a plaintiff to demonstrate that his protected activity was the 'but for' cause of the alleged adverse action in a retaliation action" and that "the same analysis set forth [in the body of its brief] regarding simultaneous age and other protected class discrimination claims applies equally to [Mr. Nabors'] retaliation claims." (Def.'s Br., p. 1).  In response to Wells Fargo's arguments with respect to retaliation claims, Mr. Nabors contends that his same analysis as set forth above also applies equally to his retaliation claim(s).  As such, Mr. Nabors can maintain his retaliation claim(s) concurrently with his age claim and other claims.

[6] While Wells Fargo references January 21, 2010 as the relevant date for purposes of the purportedly applicable 300 day limitations period, January 20, 2010 is actually the date 300 days prior to November 16, 2010, the date on which Mr. Nabors filed his administrative Charge of Discrimination.

[7] *See* note 6, *supra*.

3

acts as background evidence in support of a timely claim. *Id.*

Moreover, under the continuing violation doctrine, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Everson v. City of Madison*, 672 F. Supp. 2d 881, *885 (W.D. Wis. December 10, 2009) (citing *Morgan,* 536 U.S. 101, 105 (2002)). The Supreme Court adopted this approach because it concluded that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id*. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)).  It is irrelevant for purposes of Title VII that some of the component acts of the hostile work environment fall outside the statutory time period.  *Morgan*, 536 U.S. at 117.  So long as an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by this Court for purposes of liability. *Id.* Here, because the alleged incidents before January 20, 2010 (*i.e.*, incidents addressed, in detail, in the attached Appendix and discussed below in Sections V(A)(4), note 18, and IX, herein, including, but not limited to, incidents pertaining to Ann Perri, Jerry Harms, Krista Tipton, Chip Flannagan, Dennis Thonvold and Gary Schlenker) contributed to the hostile work environment to which Mr. Nabors was subjected on or after January 20, 2010 (e.g., monkey sounds played on weekly sales calls), he may rely on the same to establish liability.[8]

---

[8] Furthermore, unlike Title VII, claims brought under Section 1981 are not subject to the same procedural requirements and a plaintiff need not file an administrative charge prior to bringing suit.  *Greenwood v. U.S. Steel Corp.*, 2010 U.S. Dist. LEXIS 90289, *17 (N.D. Ind. August 31, 2010) (citing *Ruiz v. Adecco Employment Services,* 2002 U.S. Dist. LEXIS 21058, *3, n. 1 (S.D. Ind. Oct. 29, 2002) (providing that Section 1981 actions do not require plaintiffs to file a prior administrative charge).  Moreover, a four-year statute of limitations is applicable to Mr. Nabors' Section 1981 claims. *See Gupta v. Madison Metropolitan School Dist et al.*, 2005 U.S. App. LEXIS 1039, **4-5 (7th Cir. 2005); *Dandy v. United Postal Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004); *see also Odom v.*

## V.  TITLE VII AND SECTION 1981 DISPARATE TREATMENT CLAIMS.[9]

### A.  Mr. Nabors Can Establish A *Prima Facie* Case of Title VII/Section 1981 Discrimination.[10]

*1.  Mr.  Nabors  Can  Establish  That  He  Met  Legitimate  Job  Expectations.*

With respect to Mr. Nabors' Title VII and Section 1981 race discrimination claims, Wells

Fargo concedes that Mr. Nabors is a member of a protected class (as an African-American) and

that he suffered an adverse employment action by being discharged. (*See* Def.'s Appendix, ¶ 1;

*see also* Def.'s Br., p. 5).[11]  However, Wells Fargo argues that Mr. Nabors cannot establish that

---

*Herman et al.*, 2005 U.S. Dist. LEXIS 26889, *21-22 (N.D. Ind. Nov. 7, 2005).  As such, the 300-day limitations period referenced by Wells Fargo does not apply to Mr. Nabors' Section 1981 claims.

[9]  A *prima facie* case of race discrimination under Section 1981 is predicated on the same elements as a race discrimination claim under Title VII.  *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 789 (7th Cir. 2001).  Under Title VII, a plaintiff may meet his burden of proof by offering direct evidence of the defendant's discriminatory intent or by proving disparate treatment through the indirect method.  *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001).  Under the direct method, a plaintiff can survive summary judgment by showing sufficient direct or circumstantial evidence on which a jury could find that the alleged adverse employment action was taken for a discriminatory reason.  *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009).  A plaintiff may rely on a "convincing mosaic" of circumstantial evidence as direct proof of discrimination.  *Satter v. Motorola, Inc.*, 138 F.3d 1164, 1170 (7th Cir. 1998).  Circumstantial evidence used to construct a "convincing mosaic" can include suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and inconsistent explanations or behavior.  *See Sun v. Bd. Of Trs. Of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *Nanavaty v. City of Indianapolis*, No. IP-99-1521, 2001 U.S. Dist. LEXIS 22809, *35 (S.D. Ind. Dec. 19, 2001).  Here, Mr. Nabors can meet his burden under the direct (convincing mosaic) and indirect methods.

[10]  Under the indirect method of proof, a plaintiff must show that (1) he is a member of a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably by the employer.  *Atamus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008).  If the plaintiff establishes his *prima facie* case, then the defendant must state a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the defendant offers a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to come forward with evidence showing that the proffered reason is pretextual.  *Id.* at 804.

[11]  While Wells Fargo argues that Mr. Nabors cannot establish that he suffered an adverse employment action with respect to his December 16, 2009 Final Written Notice ("2009 December Notice"), the facts (viewed in the light most favorable to Mr. Nabors), as applied to applicable legal authority, suggest otherwise.  More specifically, Wells Fargo correctly notes that "discipline without more is not a materially adverse action." (Def.'s Br., p. 5) (case citations omitted).  If Mr. Nabors had only received the 2009 December Notice, then Wells Fargo's contention could possibly be applicable, but Mr. Nabors was ultimately fired.  A warning can constitute an adverse employment action when it is accompanied or followed by "tangible job consequences," and can provide evidence tending to show that truly adverse employment actions were motivated by illegal reasons.  *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (quoting *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998).  That is

he was meeting its legitimate job expectations at the time of his termination and that no similarly situated individuals outside of his race were treated more favorably. (*See* Def.'s Br., pp. 3-4, 5-7).  With respect to whether Mr. Nabors satisfied the second prong of his *prima facie* case, Wells Fargo's brief focuses, in part, on the 2009 December Notice that Mr. Nabors received *without mentioning* several key facts pertinent to whether a reasonable jury could find that Mr. Nabors was performing his job according to Wells Fargo's legitimate expectations for all of 2009 and at the time his employment was terminated on or about October 18, 2010.[12]

Moreover, Wells Fargo argues that "an employee who commits a violation of company and/or industry policy is not meeting his employer's legitimate expectations." (Def.'s Br., p. 4). However, in this case, even taking into account the 2009 December Notice, Wells Fargo

---

the case here.  For Mr. Nabors, the purported consequence (as claimed by Wells Fargo) of his 2009 December Notice and his alleged failure to supervise Mark Cubic ("Cubic") was his eventual termination of employment.

[12] More specifically, Wells Fargo acknowledged during its deposition that its Caucasian team member, Ann Perri ("Perri"), made the initial complaint that served as a catalyst for the investigation/fact-finding concerning Mr. Nabors' 2009 December Notice. (*See* Appendix – Plaintiff's Statement of Genuine Disputes ("Plf's Appendix"), pp. 60-61).  Perri's complaint was about her perceived lack of fairness concerning Mr. Nabors' redistribution of a book(s) of business of departed brokers. *Id.* at 60. Even though Wells Fargo had no policy or procedures in place at that time to specifically direct anyone on how to redistribute departing brokers' assets, Wells Fargo purportedly considered Perri's allegation serious enough to conduct an investigation that included a massive fact-finding consisting of interviews with twenty (20) Wells Fargo team members, past and present. *Id.* Curiously, however, Perri's complaint against Mr. Nabors that contributed to the investigation/fact-finding and purportedly led to the 2009 December Notice was made *after* Mr. Nabors had already complained to Wells Fargo (through its Human Resources ("HR") Consultant, Gary Schlenker ("Schlenker"), and others, including his supervisor, Dennis Thonvold ("Thonvold")), about the racially derogatory and inflammatory e-mail that Perri had received from her father pertaining to the mixed raced of then President-Elect or President Obama, and *after* Mr. Nabors had addressed Perri directly regarding the same. *Id.* at 60-61. Furthermore, in stark contrast to how it handled Perri's complaint against Mr. Nabors that resulted in the investigation/fact-finding and the 2009 December Notice, Wells Fargo conducted zero interviews and otherwise conducted no follow-up on Mr. Nabors' prior complaint to Schlenker and Thonvold about Perri, which he made in accordance with reporting procedures outlined in Wells Fargo's Harassment Policy. *Id.* at 55; *see also* 30(b)(6) – Schlenker Dep., pp. 64-65 & Deposition Ex. 1 – Wells Fargo Harassment Policy.

It is also important to note that at the time the fact-finding was being conducted concerning Mr. Nabors, Chip Flannagan ("Flannagan"), Mr. Nabors' supervisor who, along with Thonvold, issued the 2009 December Notice, had concerns about Perri's lack of honesty with respect to certain allegations that she had previously made against him and Mr. Nabors. (Flannagan Dep., pp. 33-36).  One (1) or two (2) weeks before Flannagan gave Mr. Nabors the 2009 December Notice, Flannagan knew that Perri was the individual who had made the complaint against Mr. Nabors, prompting the fact-finding. *Id.* at 36-40. Yet, Flannagan chose not to disclose to Lori Whitehead (who led the fact-finding, with the assistance of Schlenker) relevant information regarding Perri's prior lack of honesty. *Id.* Thonvold even testified that Flannagan should have disclosed any and all information relevant to the investigation/fact-finding. (Thonvold Dep., pp. 65-66).

admitted during depositions that with respect to Mr. Nabors' job performance for the entirety of 2009, he "met all and may have exceeded some key objectives" and, as such, he was adequately and satisfactorily performing his job responsibilities. (Plf's Appendix, pp. 65-66, citing Flannagan Dep., pp. 80-82; *see also* Thonvold Dep., pp. 123-128).

In addition, Wells Fargo argues that Mr. Nabors was terminated for failing to supervise one of his direct reports, Cubic, who purportedly violated company policy by engaging in unauthorized and/or questionable trade practices. (Def.'s Br., p. 4). Wells Fargo also argues that Mr. Nabors' alleged lack of supervision over Cubic placed Wells Fargo at regulatory risk, and violated Wells Fargo and industry policies, warranting his termination. *Id.* Mr. Nabors obviously disputes Wells Fargo's aforementioned contentions. However, even assuming, *arguendo*, that Mr. Nabors' purported failure to supervise Cubic placed Wells Fargo at regulatory risk, the Seventh Circuit has created a narrow exception excusing plaintiffs from showing that they met their employer's legitimate expectations "when a plaintiff alleges that other employees were also not meeting the employer's expectations but the employer selectively punished the plaintiff, or punished the plaintiff more severely, for discriminatory reasons."[13] Such an exception applies to this case.[14]

---

[13] *McNair v. Bonaventura*, 46 F. App'x. 849, 852 (7th Cir. 2002) (citing *Curry v. Menard, Inc*., 270 F.3d 473, 478 (7th Cir. 2001) and *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999); *see also Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (plaintiff need not show that he was meeting employer's expectations when plaintiff alleges that expectations themselves are being applied in a discriminatory manner)).

[14] For example, if Mr. Nabors was purportedly not meeting Wells Fargo's legitimate expectations as a result of his purported failure to supervise Cubic, a FA who allegedly violated Wells Fargo policy by engaging in unauthorized and/or questionable trade practices which placed Wells Fargo at regulatory risk, then Caucasian Regional Brokerage Managers ("RBMs") Rodney Vucenich ("Vucenich"), Jeffrey Carpenter ("Carpenter") and Kurt Bakken ("Bakken") were also not meeting Wells Fargo's job expectations. Yet, Wells Fargo selectively punished Mr. Nabors by firing him while Vucenich, Carpenter and Bakken were never disciplined in any way, let alone discharged for failing to supervise their respective FAs over whom each served as direct supervisor while said FAs violated Wells Fargo policy by engaging in unauthorized and/or questionable trade practices for months, on Vucenich, Carpenter and Bakken's respective, proverbial watches.

Thus, in light of the foregoing, as well as the additional evidence presented in Mr. Nabors' Appendix attached hereto, a reasonable jury could find that Mr. Nabors was performing his job according to Wells Fargo's legitimate expectations during the relevant periods of his employment and, as such, summary judgment must be denied.

### 2. *Similarly Situated Caucasian Employees Were Treated More Favorably Than Mr. Nabors.*

Mr. Nabors can establish that Vucenich, Carpenter and Bakken were all similarly situated, non-African-American employees that Wells Fargo treated more favorably than him.[15] Whether a comparator is similarly situated is "usually a question for the fact-finder," and summary judgment is appropriate only when "no reasonable fact-finder could find that [Mr. Nabors has] met [his] burden on the issue." *Sprail v. Village of Lisle,* 588 F.3d 940, 945 (7th Cir. 2009). The Seventh Circuit has recently reiterated that the similarly situated inquiry is flexible,

---

Furthermore, if Mr. Nabors was purportedly not meeting Wells Fargo's legitimate expectations as a result of his alleged failure to supervise Cubic, then Wells Fargo's Caucasian Branch Administration Manager, Diana Carroll ("Carroll"), and Caucasian Regional Director, Howard Williams ("Williams"), were also not meeting Wells Fargo's job expectations. Carroll's primary job function involved identifying and addressing compliance matters and she, like Mr. Nabors, was also considered a supervisory principal by FINRA standards. Yet, when meeting in person with Cubic on or about August 6, 2010 (a date on which she was already aware that Cubic was suspected of engaging in unauthorized and/or questionable trade activity) she purportedly told Cubic that she was not worried about him and that it was Mr. Nabors who concerned her. She also admitted in her deposition that she joked and otherwise engaged in light-hearted conversation with Cubic in this meeting i) that concerned allegations of his questionable trade practices and ii) that was a follow-up to Cubic's August 5, 2010 e-mail explaining his trade activity at issue. (*See* Plf's Appendix, pp. 67-70; 62-64). Mr. Nabors made Wells Fargo aware of this information concerning Carroll's inappropriate communication with Cubic on or about August 6, 2010, but Wells Fargo took no disciplinary action against her. (*Id.* at 63-64).

[15] Mr. Nabors can also establish that Carroll, Williams and Mary Mack ("Mack") were similarly situated non-African-American employees that Wells Fargo treated more favorably than him. With respect to Carroll and Williams, *see* the prior discussion in Section V(A)(1), herein, particularly in note 14, *supra*. With respect to Mack, she was a Caucasian senior leader at Wells Fargo who publicly requested prayer for the guest speaker in a meeting of over 100 Wells Fargo RBMs, nation-wide, and she was not disciplined in any way for said public religious expression. Yet, a reasonable jury could conclude that Mr. Nabors' religious expression (*e.g.,* silently praying over his food or saying "God bless you" when someone sneezed) served, in part, as a basis for his 2009 December Notice. Wells Fargo argues that "subordinates and supervisors are not proper comparators" (Def.'s Br., p. 6) and Mr. Nabors acknowledges that that is *usually* the case. However, *usually* does not mean *always*, and the Seventh Circuit *has not* held that a supervisor is never an apt comparator. *Rodgers v. White*, 657 F.3d 511, 517-18 (7th Cir. 2011). Whenever discipline is the basis for a claim of discrimination, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor. *Id.* at 518. Moreover, "[f]ormal job titles and rank are not dispositive; an employer cannot 'insulate itself from claims of racial discrimination' by making formalistic distinctions between employees." *Id.*, citing *Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999).

common-sense, and factual. *Coleman v. Donahue*, 667 F. 3d 835 at 841 (7th Cir. 2012) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008). There must be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* In other words, the proposed comparator must be similar enough to permit a reasonable jury to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision. *Coleman*, 667 F.3d at 841. Moreover, courts are looking for comparators, not "clone[s]." *Chaney v. Plainfield Healthcare Ctr.,* 612 F.3d 908, 916 (7th Cir. 2010) (court held that a reasonable jury could conclude from the record that defendant's grounds for firing plaintiff cloaked the forbidden motivation of race).

Typically, a plaintiff must at least show that the comparators (1) "dealt with the same supervisor," (2) "were subject to the same standards," and (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Illinois Dep't of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). This is not a "magic formula," however, and the similarly situated inquiry should not devolve into a mechanical, "one-to-one mapping between employees." *Humphries*, 474 F.3d at 405.

With this legal standard in mind, Mr. Nabors points to the fact that he, Vucenich, Carpenter and Bakken were all supervised by the same individual, Thonvold, the Senior Director of Brokerage for Wells Fargo's Great Lakes Region. (*See* Plf's Appendix, ¶¶120-124, pp. 67-70). As RBMs in the Great Lakes Region, Vucenich, Carpenter and Bakken were all subject to the same standards as Mr. Nabors. *Id.* Furthermore, they all engaged in similar conduct of

directly supervising their respective FAs who Wells Fargo found to have violated its policy by engaging in unauthorized and/or questionable trade practices. *Id.* Wells Fargo tries to draw a distinction without a legally recognizable difference between how Mr. Nabors responded to learning of Cubic's allegedly questionable trade activity as compared to how Vucenich, Carpenter and Bakken responded to their respective FAs' purported misdeeds. (*See* Def.'s Br., pp. 6-7). However, Wells Fargo's argument of this nature actually underscores the genuine issues of material fact regarding whether mitigating circumstances in this case can sufficiently distinguish Mr. Nabors' conduct from that of Vucenich, Carpenter and Bakken and whether Wells Fargo's discriminating motive and intent played a role in preventing Mr. Nabors from being even more active in the investigation of Cubic.  *See Wallace*, 103 F. 3d at 1396; *Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993) ("summary judgment is *particularly inappropriate* for settling issues of intent or motivation")(emphasis added).

### *3. Similarly Situated Female Employees Were Treated More Favorably Than Mr. Nabors.*

As Previously addressed above in Section V(A)(1) and (2), herein, Mack, with regard to Mr. Nabors' 2009 December Notice, and Carroll, with regard to the termination of Mr. Nabors' employment, are both female and are proper comparators here.  Thus, summary judgment must be denied as to Mr. Nabors' Title VII sex discrimination claim.

### *4. Mr. Nabors Can Establish Religious Discrimination by Wells Fargo Through The Direct Method.[16]*

---

[16] Under the direct method of proof, a plaintiff will survive summary judgment by showing sufficient evidence on which a jury could find that the employer took the adverse employment action for a discriminatory reason. *Rice v. City of Kendallville et al.*, 2009 U.S. Dist. LEXIS 27795, *23 (N.D. Ind. March 31, 2009) (citing *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009).  A plaintiff may satisfy his burden under the direct method "by constructing a convincing mosaic of circumstantial evidence." *Rice*, 2009 U.S. Dist. LEXIS at *24, citing *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006).  However, the "focus of the direct method of proof…is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).

Here, Mr. Nabors has presented evidence that Wells Fargo (through Lori Whitehead ("Whitehead"), Schlenker, Thonvold and Flannagan) made religion a factor in the workplace by interrogating Mr. Nabors about: i) whether he silently prayed over his food at lunch; ii) whether he said "God bless you" after someone sneezed; iii) whether and how he responded to other Wells Fargo team members who may have inquired about spiritual matters; and iv) his biblical beliefs as applied to the manner by which he conducted himself at work. (*See* Plf's Appendix, specific responses to ¶¶ 79-80). Wells Fargo explicitly and repeatedly judged and harassed Mr. Nabors because when asked, he did not deny that Jesus Christ is his personal Lord and Savior (Compl., ¶22) and he lived a "Godly lifestyle" to which one of his supervisors, Flannagan, attested during his deposition.

As a result of Mr. Nabors' religion/religious beliefs (as manifested through the aforementioned religious expression), Mr. Nabors received the 2009 December Notice and his employment was subsequently terminated. Thus, from these facts, a jury could reasonably infer that Wells Fargo (through Whitehead, Schlenker, Thonvold and Flannagan), possessed by illegal, discriminatory motive, made the decision to issue the 2009 December Notice and ultimately terminate Mr. Nabors' employment.[17]

**B.   Mr. Nabors Can Establish That Wells Fargo's Proffered Reasons Are Pretextual.**

Wells Fargo argues that its purportedly legitimate, non-discriminatory reasons for issuing the 2009 December Notice and ultimately terminating Mr. Nabors' employment were because of

---

[17] Title VII also prohibits religious discrimination in the form of workplace harassment, such as religious hostile work environment harassment, which involves conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment. *Venters v. City of Delphi*, 123 F.3d 956, 975 (7th Cir. 1997). While Wells Fargo's brief does not specifically address Mr. Nabors' religious-based hostile work environment/harassment claims, Mr. Nabors expressly contends that from the evidence he has referenced herein and otherwise presented in his Appendix – Statement of Genuine Issues, a jury could reasonably infer that Wells Fargo's conduct (through Whitehead, Schlenker, Thonvold and Flannagan) had the purpose or effect of unreasonably interfering with Mr. Nabors' work performance or created an intimidating, hostile or offensive work environment.

his "significant violations of Wells Fargo's policies, and "utter failure to fulfill his supervisory responsibilities, respectively." (Def.'s Br., p. 8). In addition, Wells Fargo argues that the undisputed record is devoid of any evidence that Wells Fargo's reasons are pretextual. *Id.* at 9. However, the genuine issues of material fact detailed in Mr. Nabors' Appendix, coupled with relevant case law, undermine Wells Fargo's arguments. (*See* Plf's Appendix, generally, and ¶¶115-116, specifically). For example, to meet his burden of establishing pretext, Mr. Nabors must "identify such weaknesses, implausibilities, or contradictions" in Wells Fargo's proffered reason(s) "that a reasonable person could find it unworthy of credence." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). Moreover, if the stated reason(s), even if actually present to the mind of the employer, wasn't what induced the employer to take the challenged employment action, it was pretext. *Id.* at 853 (citing *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

Here, the record establishes that weaknesses, implausibilities, inconsistencies or contradictions exist with respect to Wells Fargo's proffered reason(s) for terminating Mr. Nabors' employment and issuing the 2009 December Notice. With respect to the former challenged employment action, Mr. Nabors directs this Court to his identification of Wells Fargo's mixed messaging concerning its purported reason(s) for firing him. *See* Plf's Appendix, ¶¶115-116. With respect to the 2009 December Notice, Mr. Nabors directs this Court to the above discussion in Section V(A)(1), herein.

Furthermore, the Supreme Court has held that comparator evidence is relevant at the pretext stage. *Coleman,* 667 F.3d at 857. "In McDonnell Douglas itself, the Supreme Court taught that 'evidence that white employees involved in acts…of comparable seriousness' received more favorable treatment would be '[e]specially relevant' to a showing that the

employer's 'stated reason for [the plaintiff's] rejection was in fact pretext.'" *Id.* (citing *McDonnell Douglas*, 441 U.S. at 804); *see also Gordon v. United Airlines*, 246 F.3d 878, 892 (7th Cir. 2001); *Greenwood v. U.S. Steel Corp. et al.*, 2010 U.S. Dist. LEXIS 90289, *25 (N.D. Ind. August 31, 2012) (citing *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005) (an employer's failure to follow its own internal employment procedures can constitute evidence of pretext).  Thus, in the Seventh Circuit, "comparator evidence can do 'double duty' at the prima facie and pretext stages." *Coleman*, 667 F.3d at 858.[18]

In this case, Mr. Nabors has offered evidence sufficient to support a finding that RBMs Vucenich, Carpenter and Bakken, as well as Williams, Carroll and Mack were situated similarly to him, are outside of his race (and sex in cases of Carroll and Mack), and received more lenient punishment for a comparably serious action(s).  The presented evidence of Wells Fargo's selective enforcement establishes yet another genuine issue of material fact as to whether Wells Fargo's proffered reason(s) for terminating Mr. Nabors' employment are pretextual. *See* above discussion in Section V(A)(II), herein.

## VI.   TITLE VII AND SECTION 1981 RETALIATION CLAIMS.[19]

## A.   Mr.   Nabors   Can   Establish   Retaliation   Under   The   Direct   Method.[20]

---

[18] Several other circuits agree.  *See, e.g., Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) ("The concept of 'similarly situated employees may be relevant to both the first and third steps of the *McDonnell Douglas* framework."); *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) (same); *EEOC v. Horizon/CMS Helathcare Corp.*, 220 F.3d 1184, 1195 n.6 (10th Cir. 2000) ("while evidence that a defendant treated a plaintiff differently than similarly situated employees is certainly *sufficient* to establish a prima facie case, it is '[e]specially relevant' to show pretext if the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action").

[19] Retaliation claims brought under Section 1981 are analyzed under the same framework as retaliation claims brought under Title VII.  *See Chism v. Con-Way Freight, Inc.*, 2009 U.S. Dist. LEXIS 88202 *11 (N.D. Ind. Sept. 24, 2009).

[20] To establish a retaliation claim under the direct method, Mr. Nabors must prove that: (1) he engaged in activity protected by Title VII; (2) Wells Fargo took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action.  *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011) (citing *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010)).

**1.   A Genuine Issue of Material Fact Exists As To Whether Mr. Nabors Suffered An Adverse Employment.**

As previously set forth in note 11, *supra*, a final written warning (*e.g.,* December 2009 Notice) can constitute an adverse employment action when accompanied or followed by "tangible job consequences" and can provide evidence tending to show that truly adverse actions were motivated by illegal reasons. *See Oest*, 240 F.3d at 613. For Mr. Nabors, the purported consequences of his 2009 December Notice and his alleged failure to supervise Cubic was his eventual termination of employment.  While Wells Fargo argues that the 2009 December Notice was issued *before* Mr. Nabors' internal complaints in January and February of 2010, it fails to address the fact that said warning was issued *after* several other internal complaints that Mr. Nabors made between late -2008 and early to mid-2009 (*e.g.,* reports/complaints to his supervisors, Wayne Hall ("Hall") and Flannagan, about Mr. Nabors being warned to "be careful around Jerry Harms" because "he's really racist" and "he really dislikes [him]"; reports/complaints to Wells Fargo's HR Consultant, Schlenker, that Mr. Nabors was offended by the racially derogatory and insensitive e-mail communication between Wells Fargo team member, Ann Perri, and her father, that implied that then President-Elect or President of the United States, Barack Obama, was a "mixed mongrel"; and the report/complaint that Mr. Nabors made to his supervisor, Flannagan, regarding the implication that Wells Fargo team member Krista Tipton's discomfort around him was because of his race). Here, a reasonable jury could conclude that the December 2009 Notice can be part of Mr. Nabors' retaliation claims and thus, summary judgment must be denied.

**2.   A Genuine Issue of Material Fact Exists As To The Establishment of A Causal Nexus.**

Wells Fargo correctly points out that the "convincing mosaic" of circumstantial evidence required under the direct evidence prong "may include suspicious timing; ambiguous statements;

behavior or comments directed at others in the protected class; and evidence that similarly situated employees outside the protected class received systematically better treatment." (Def.'s Br., pp. 10-11) (citing *Burness v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011)). In the present case, the tiles in the convincing mosaic establish that a reasonable jury could infer from the facts viewed in the light most favorable to Mr. Nabors that a causal nexus exists with respect to Mr. Nabors' internal complaints and his termination of employment on or about October 18, 2010.[21]

With regard to ambiguous statements, Mr. Nabors directs the Court to Wells Fargo's mixed messaging concerning its purported reason(s) for terminating Mr. Nabors' employment. (*See* Plf's Appendix, ¶¶115-116). Regarding evidence that similarly situated employees who did not make prior complaints of discrimination and/or retaliation, RBMs Vucenich, Carpenter and Bakken all suffice as previously articulated in Section V(A)(2), herein. (*See also* Plf's Appendix, p. 67, note 6; *Id.* at 68). Moreover, Carroll and Williams are proper comparators as previously set forth in Section V(A)(2), herein. At the time of Mr. Nabors' termination of employment, neither Carroll nor Williams had ever complained to Wells Fargo about discrimination and/or retaliation against him/her.

Finally, Wells Fargo argues that Mr. Nabors' 2008 failed audit, 2009 December Notice and alleged failure to supervise Cubic "irreparably weakens [his] urged inference that any

---

[21] More specifically, with regard to suspicious timing, the record reflects that Mr. Nabors reported to Schlenker and Thonvold in September or October 2010 that he was subjected to what he believed to be racist, hurtful and degrading monkey sounds on weekly sales calls and Wells Fargo failed to conduct an investigation or otherwise follow-up Mr. Nabors' complaints which were made in accordance with its Harassment Policy. Instead, Wells Fargo fired Mr. Nabors a short time after his aforementioned September/October 2010 complaints. (*See* Plf's Appendix, ¶¶105-107; *see also Alalade v. AWS Assistance Corp.*, 2011 U.S. Dist. LEXIS 53535, *18-20 (N.D. Ind. May 18, 2011) (denied defendant's motion for summary judgment on plaintiff's retaliation claim because of the existence of suspicious timing and more); *Jones v. Alpha Rae Pers.*, Inc., 2012 U.S. Dist. LEXIS 150566, *15-16, n.3 (N.D. Ind. Oct. 18, 2012) (citing *Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation.") (citation omitted); *Boumehdi v. Plastage Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007) (holding that a jury could infer intent to retaliate where adverse action occurred just one month after complaints about discrimination).

retaliation was afoot here." (Def.'s Br., p. 12). However, Mr. Nabors' *urged inference* is actually bolstered by the following additional facts of record. First, even with a failed audit in 2008, Wells Fargo determined that Mr. Nabors "met all and may have exceeded some key objectives", and that he adequately and satisfactorily performed his job responsibilities for the entirety of 2008. *See* Plf's Appendix, ¶117; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999) (summary judgment reversed on racial discrimination claim based, in part, on plaintiff's evidence of positive employment evaluations). Moreover, the failed audit score improved from a "2" to a "4" in late 2009, indicating that Mr. Nabors was trending in the right direction from an audit and compliance standpoint. *See* Plf's Appendix, ¶117. With respect to Mr. Nabors' overall job performance in 2009, including his December 2009 Notice, Wells Fargo still determined that Mr. Nabors "met all and may have exceeded some key objectives", and that he adequately and satisfactorily performed his job responsibilities for the entirety of 2009. *Id.* at ¶118; *see also Johnson*, 170 F.3d at 743. As for his handling of Cubic, Mr. Nabors directs the Court to his above discussion in Section V(A)(2), herein. Specifically, Wells Fargo fired Mr. Nabors while Vucenich, Carpenter and Bakken were never disciplined in any way for failing to supervise their respective FAs over which they each served as direct supervisor, and said FAs violated Wells Fargo policy by engaging in unauthorized and/or questionable trade practices for months, on Vucenich, Carpenter and Bakken's respective, proverbial watches.[22]

**B.     Mr. Nabors Can Establish Retaliation Under The Indirect Method.[23]**

---

[22] Mr. Nabors also directs the Court's attention to note 14, *supra*, regarding the discussion of Wells Fargo's better treatment of additional proposed comparators, Carroll and Williams.

[23] Under the indirect method, the same *McDonnell Douglas* burden-shifting framework and analysis as stated above applies. *See Atamus,* 520 F.3d at 672-73; *see also Bartlett v. NIBCO, Inc.,* 2010 U.S. Dist. LEXIS 42808, *7 (N.D. Ind. April 28, 2010).

Mr. Nabors has already established that a jury could reasonably conclude that he was meeting Wells Fargo's legitimate expectations and, at minimum, a genuine issue of material fact exists regarding the same. Moreover, despite Wells Fargo's contention to the contrary, Mr. Nabors can establish that his proposed comparators are similarly situated; he experienced an adverse employment action with respect to his December 2009 Notice and termination of employment; and that Wells Fargo's proffered reason(s) for its adverse actions concerning him are pretextual. As such, Mr. Nabors can establish retaliation under the indirect method.

## VII.  MR. NABORS' ADEA CLAIM MUST SURVIVE SUMMARY JUDGMENT.[24]

Here, Mr. Nabors was sixty-five (65) years old at the time of his employment termination, which clearly satisfies the first prong of his *prima facie* case of age discrimination. Moreover, he has already established that a jury could reasonably conclude that he was meeting Wells Fargo's legitimate expectations and, at minimum, a genuine issue of material fact exists regarding the second prong. Wells Fargo conceded the third prong in that Mr. Nabors' termination of employment constituted an adverse employment action. As for the fourth prong, Carroll (age thirty-nine (39)), Carpenter (age fifty-four (54)), Bakken (age forty-six (46)) and Vucenich (age forty-two (42)) can be proper comparators because they are each similarly situated, "substantially younger" employees who were retained by Wells Fargo and otherwise treated more favorably than Mr. Nabors. *See Scott v. Parkview Memorial Hosp.*, 175 F.3d 523, 525 (7th

---

[24] To prevail on an ADEA claim, a plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross,* 557 at 176. Mr. Nabors must show that his age "actually played a role in [Wells Fargo's decision-making] process and had a determinative influence on the outcome." *Hemsworth,* 476 F.3d at 490 (quoting *Schuster,* 327 F.3d at 573 and *Reeves,* 530 U.S. at 141. Under the indirect method of proof, Mr. Nabors bears the initial burden of establishing a *prima facie* case of age discrimination. *McDonnell Douglas Corp*., 411 U.S. at 802, 04. To do so, Mr. Nabors must establish that: (1) he is a member of a protected class (i.e. – 40 or older); (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than either a similarly situated employee, outside of his protected class or a similarly-situated, "substantially younger" employee. *Bayless v. Ancilla Domini College*, 781 F.Supp.2d 740, 752 (N.D. Ind. February 15, 2011) (citing *Martino v. MCI Communs. Servs.* 574 F.3d 447, 453 (7th Cir. 2009).

Cir. 1999) ("An inference of discrimination is appropriate only when the employer favors 'substantially' younger persons, a term we have defined operationally as 'ten years or more'.")[25] Furthermore, Mr. Nabors has already established that a jury could reasonably conclude that Wells Fargo's proffered reasons for firing him are pretextual. (*See* above Section V(B)). Accordingly, summary judgment must be denied with respect to Mr. Nabors' ADEA claim.

## VIII.  MR. NABORS' ADAAA[26] CLAIM FOR DISABILITY DISCRIMINATION MUST SURVIVE SUMMARY JUDGMENT.[27]

### A.  Genuine Issues of Material Fact Exist As To Mr. Nabors' Claim of Disparate Treatment Under the ADAAA.

With respect to the threshold inquiry of whether Mr. Nabors is disabled under the ADAAA, Wells Fargo does not dispute that Mr. Nabors' diabetes and high blood pressure constitute disabilities. (Def.'s Br., p. 15). However, Wells Fargo's contention that Mr. Nabors' enlarged

---

[25] *See also* Mr. Nabors' above discussion in Sections V(A)(1)-(3), herein.

[26] Although Wells Fargo did not specifically address the issue, Mr. Nabors  notes that because the alleged discrimination took place after January 1, 2009, the ADA Amendments Act of 2008 controls this case, and the Court should apply those standards accordingly. *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 823, n. 7 (7th Cir. 2011).

[27] To prevail on an ADAAA claim, a plaintiff must show that: (1) he is disabled; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer took an adverse job action against him because of his disability or failed to make a reasonable accommodation. *See Fieldman v. Olin Corp.*, 692 F.3d 748, *753 (7th Cir. 2012); *see also Hoffman v. Carefirst of Fort Wayne, Inc. d/b/a Advanced Healthcare*, 2010 U.S. Dist. LEXIS 90879, *18 (N.D. Ind. Aug. 31, 2010). The ADAAA defines "disability" with respect to an individual as (A) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (B) "a record of such an impairment; or (C) "being regarded as having such an impairment." *Hoffman*, 2010 U.S. Dist. LEXIS at *18, citing 42 U.S.C. § 12102(1). Whether a plaintiff complains of a failure to accommodate or of disparate treatment, the plaintiff must show as a threshold matter that he is a qualified individual with a disability. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) ("Once a plaintiff has established that [he] is a qualified individual with a disability, [he] may show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate.").

To establish a *prima facie* case of disability discrimination, Mr. Nabors must provide evidence that: (1) he is disabled within the meaning of the ADAAA; (2) he was meeting the legitimate employment expectations of Wells Fargo; (3) he was subject to an adverse employment action; and (4) similarly situated, non-disabled employees were treated more favorably. *Torres v. Bremen Castings, Inc.*, 2012 U.S. Dist. LEXIS 140177, *27 (N.D. Ind. Sept. 28, 2012) (citing *Dickerson v. Bd. Of Trs. Of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Thereafter, the *McDonnell Douglas* framework and analysis set forth above in Section V(A), n. 10, *supra*, applies here. *Id.*

prostate *does not* constitute a disability is simply misguided.[28] Moreover, a reasonable jury could conclude that Mr. Nabors was qualified to perform the essential functions of his job as evidenced by Wells Fargo's determination that with regard to his job performance for the entirety of 2009, he "met all and may have exceeded some key objectives", and for the other reasons articulated above in Section V(A)(1), herein. Furthermore, a jury could reasonably conclude that Mr. Nabors can establish that he suffered an adverse employment action as discussed above in Section V(A)(1), note 11; that similarly situated, non-disabled employees received more favorable treatment[29]; and that Wells Fargo's proffered reason(s) for its challenged employment action(s) is pretext for disability discrimination.[30]

In addition, a genuine issue of material fact exists with respect to whether Mr. Nabors was "regarded as" disabled under the ADAAA. The record reflects that shortly before Mr. Nabors received the December 2009 Notice, he expressed to Wells Fargo (through Schlenker, Flannagan and Thonvold) that he noticed blood in his urine and that he was concerned that his enlarged prostate was cancerous.[31] While Wells Fargo argues to the contrary, it relies upon pre-

---

[28] The ADAAA states that "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations…". *Hoffman*, 2010 U.S. Dist. LEXIS at *20. "Therefore, the question of whether an individual's impairment is a disability under the ADA *should not* demand extensive analysis. *Id.* (emphasis added). Here, Mr. Nabors suffered from a physical impairment that substantially limited a major life activity, including the major bodily function of his bladder. The record reflects that Mr. Nabors experienced blood in his urine and that he otherwise had difficulty emptying his bladder and resisting the urge to urinate. As such, a reasonable jury could conclude that Mr. Nabors' enlarged prostate constitutes a disability under the ADAAA.

[29] *See* Section V(A)(2), herein. Also, it is important to note that neither RBMs Vucenich, Carpenter or Bakken nor Williams or Carroll made Wells Fargo aware of any medical conditions from which they suffered, let alone any disabilities recognized under the ADAAA. *See* Plf's Appendix, pp. 67-69 and n. 6.

[30] *See* Section V(B), herein, regarding pretext.

[31] *See* Nabors Dep., pp. 12-13, 126-128; 30(b)(6) – Schlenker Dep., pp. 82-84; *but see* Thonvold Dep., pp. 45-46 (Thonvold testified that Mr. Nabors mentioned that he was going through some prostate screening and that was it.); Flannagan Dep., pp. 23-25 (Flannagan testified that he had no knowledge that Mr. Nabors may suffer from cancer; that Mr. Nabors did not inform him that certain medical examinations and/or test results revealed that he may suffer from prostate cancer; that he does not recall Mr. Nabors informing him of an issue involving blood in his urine; that

amendment ADA cases from the Eighth and Seventh Circuits. (Def.'s Br., p. 16). However, in analogous situations, this Court has found prior defendants' reliance on case law applying the pre-amendment ADA concerning "regarded as" analysis unpersuasive. *See Snyder v. Livingston et al.*, 2012 U.S. Dist. LEXIS 59193, *24-26 (N.D. Ind. April 27, 2012).

**B.  A Genuine Issue of Material Fact Exists As To Mr. Nabors' Failure to Accommodate Claim under The ADAAA .[32]**

Because Mr. Nabors has already set forth the genuine issues of material fact pertaining to the first two (2) prongs of his *prima facie* case of failure to accommodate, he will focus on Wells Fargo's actual failure to reasonably accommodate his request to postpone the December 16, 2009 meeting in Chicago in light of his enlarged prostate and related complications (i.e.-blood in his urine and related symptoms). Wells Fargo's argument that it has no liability for failure to accommodate Mr. Nabors is premised upon its contention that Mr. Nabors never satisfied his initial duty to inform Wells Fargo of his disability. (Def.'s Br., p. 17). However, as previously addressed herein, a jury could reasonably conclude from the record viewed in the light most favorable to Mr. Nabors that *he did make Wells Fargo aware* of his enlarged prostate, thereby satisfying his aforementioned duty and triggering Wells Fargo's duty to engage in the interactive process.[33]

---

he only recalls that toward the end of 2009, Mr. Nabors informed him that he was going to Chicago to have some high level medical tests done, but Flannagan was not sure about the nature of the tests.)

[32] To establish a prima facie case of failure to accommodate, Mr. Nabors must prove that: (1) he is a qualified individual with a disability; (2) Wells Fargo was aware of his disability; and (3) Wells Fargo failed to reasonably accommodate his disability. *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010).

[33] *Kingston v. Ford Meter Box Co.,* 2009 U.S. Dist. LEXIS 31710, *21 (N.D. Ind. April 10, 2009) ("Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but is sufficient to notify the employer that the employee may have a disability that requires an accommodation, the employer must ask for clarification.")

**C.  Genuine Issues of Material Fact Exist As to Mr. Nabors' Retaliation Claim.**

Wells Fargo concedes that a request for accommodation constitutes protected activity under the ADAAA; however, it disputes that Mr. Nabors engaged in such protected activity. (Def.'s Br., p. 18). Here, Mr. Nabors establishes that he disclosed to Wells Fargo (through Schlenker, Flannagan and Thonvold) that he had an enlarged prostate, was experiencing blood in his urine and that he was concerned that he might have cancer. (*But see* note 32, *supra*). Moreover, shortly after making said disclosures, Schlenker, Flannagan and Thonvold set up a meeting in Chicago for December 16, 2009, denied Mr. Nabors' accommodation request to post-pone the meeting in light of his enlarged prostate and related symptoms and complications, and issued the December 2009 Notice, which was an adverse employment action as articulated above in Section V(A)(1), herein.  Further, while Wells Fargo argues that Mr. Nabors cannot establish a causal connection between i) his disclosure of his disability to Wells Fargo and subsequent request for accommodation and ii) the adverse employment action he suffered, a jury could reasonably conclude otherwise.[34]  Accordingly, Mr. Nabors' ADAAA retaliation claim must survive summary judgment.

## IX.  MR. NABORS' HOSTILE WORK ENVIRONMENT CLAIM MUST SURVIVE SUMMARY JUDGMENT.[35]

---

[34] While Whitehead conducted the investigation that allegedly (as claimed by Wells Fargo) resulted in the December 2009 Notice, she consulted with Schlenker throughout the investigation and he was very much aware of Mr. Nabors' enlarged prostate and related symptoms and complications, as well as his request for accommodation addressed above. *See also Alalade*, 2011 U.S. Dist. LEXIS at *18-20; *Jones*, 2012 U.S. Dist. LEXIS at *15-16, n. 3 (citing *Magyar*, 544 F.3d at 772; *Boumehdi*, 489 F.3d at 793.

[35] To survive summary judgment on his hostile work environment claims against Wells Fargo, Mr. Nabors must come forward with evidence that could allow a reasonable jury to find that: (a) he was subjected to unwelcome harassment; (b) the harassment was based on race (or his membership in other protected classes); (c) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and to create a hostile or abusive working environment; and (d) there is a basis for employer liability. *Henderson v. Irving Materials, Inc. et al.*, 329 F.Supp.2d 1002, 1008 (S.D. Ind. Aug. 4, 2004) (citing *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). In determining whether a plaintiff meets the standard, courts consider the totality of the relevant circumstances. *Henderson*, 329 F.Supp.2d at 1008 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). The Court may not consider each incident in isolation; but rather, "the Court must consider each as part of a larger quilt of racial hostility that could convince a reasonable jury that the conditions of Mr. Nabors'

A. **Genuine Issues of Material Fact Exist As To Whether Mr. Nabors Was Subjected to Harassment.**

The record reflects that Mr. Nabors reported to his supervisor, Thonvold, and HR Consultant, Schlenker, that he was subjected to what he believed to be racist, hurtful and degrading monkey sounds played on multiple occasions during weekly sales calls in September/October 2010, and Wells Fargo failed to conduct an investigation or otherwise follow-up Mr. Nabors' complaints. Prior to that humiliating experience, Mr. Nabors was subjected to an investigation and fact-finding that purportedly resulted from a retaliatory complaint against him by a Wells Fargo team member, Perri (Caucasian Female), about whom Mr. Nabors had already complained. Specifically, Mr. Nabors had complained about Perri to Wells Fargo (through Schlenker and Thonvold) because he was offended by the racially derogatory and insensitive e-mail between Perri and her father that implied that then President-Elect or President of the United States, Barack Obama, was a "mixed mongrel." While Wells Fargo *promptly* investigated Perri's complaint of purported conduct by Mr. Nabors that wasn't even an alleged policy violation[36] and issued the December 2009 Notice, it failed to investigate or otherwise conduct the requisite follow-up on Mr. Nabors' complaint about Perri.

In addition, one of Mr. Nabors' supervisors, Flannagan, told him that he should: "never be behind closed doors with [Tipton]; "never be alone around [Tipton]; and that [Tipton's] someone who has a real, real problem with [Mr. Nabors] for obvious reasons", while implying that race was the primary reason for her animosity toward Mr. Nabors. Prior to that, Mr. Nabors was warned by other Wells Fargo team members (*e.g.*, Mike Londeen) "to be careful around Jerry

---

employment were materially altered by a racially hostile work environment." *Henderson,* 329 F.Supp.2d at 1008-1009. Moreover, while many of Mr. Nabors' citations herein utilize the word "race" or "racial", the standards found herein are equally applicable to his other protected classes (*i.e.*, gender, religion, age and disability). With respect to Mr. Nabors' religious-based hostile work environment/harassment claims, *see* note 18, *supra.*

[36] Wells Fargo had no policy or procedures in place at that time to specifically direct anyone, let alone Mr. Nabors, on how to redistribute departing brokers' assets, which is what Perri's complaint against Mr. Nabors entailed.

Harms" because "he's really racist" and "he really dislikes you." Harms (Caucasian) was a big producer at Wells Fargo who worked on the third floor of Wells Fargo's downtown Fort Wayne location, which is where several of Mr. Nabors' direct reports and other team members were located. As such, Harms' racist attitude and communication with Mr. Nabors' direct reports and other team members directly affected Mr. Nabors in his efforts to cross-sell and transition business from Harms to his FAs.

While Wells Fargo argues that many of Mr. Nabors' allegations are second hand (Def.'s Br., pp. 21-22), said argument falls flat with regard to the monkey sounds that were directed at him on multiple occasions, all of which when he was the only African-American on the sales calls at issue. As for the other incidents addressed above and in Mr. Nabors' Appendix attached hereto, they must be viewed in the aggregate, not in isolation. *See Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (reversing summary judgment for employer in racially hostile environment case where district court had failed to consider multiple incidents in their entirety). Thus, viewing the blatantly racist monkey sounds (the reports about which Wells Fargo failed to investigate), in conjunction with the other racially offensive conduct, a reasonable jury could find that all were part of a racially hostile work environment.

## B. A Genuine Issue of Material Fact Exists As To Whether The Harassment Altered Mr. Nabors' Employment.

As set forth above, a jury could reasonably conclude that the harassment Mr. Nabors endured at Wells Fargo was severe or pervasive enough to alter the conditions of his employment and create an abusive environment. *See Cerros*, 288 F.3d at 1045-46. Here, Mr. Nabors was subjected on multiple occasions to monkey sounds being played on weekly sales calls on which his direct reports participated, many of whom laughed and giggled when hearing the sounds. After enduring those humiliating episodes and reporting the incidents to his supervisor and HR to

no avail, Mr. Nabors still had to work with those same FAs without knowing which one initiated the racially derogatory and demoralizing sounds because Wells Fargo failed to investigate the matter. That, coupled with the previously stated ways in which Mr. Nabors' employment was altered, it is clear that summary judgment must be denied with respect to his hostile work environment claim.

**C.** **A Genuine Issue of Material Fact Exists As To Whether Mr. Nabors Can Establish A Basis for Holding Wells Fargo Liable for Hostile Work Environment/Harassment.**[37]

Here, the unequal treatment with regard to how internal complaints were handled when the complaining employee was African-American (*e.g.,* Mr. Nabors – who made several complaints to his supervisors and HR, in accordance with Wells Fargo's Harassment Policy, and Wells Fargo failed to investigate or otherwise follow-up as required) as opposed to Caucasian (*e.g.,* Perri – who complained about Mr. Nabors *after* he had complained about her, yet Wells Fargo launched a full-fledged investigation/fact-finding regarding her allegations) is based on enforcement of policies by supervisors and manager, including HR. As such, a reasonable jury could conclude that a basis exists to hold Wells Fargo liable for any hostile environment to which Mr. Nabors was subjected. Further, even under the co-worker negligence standard, a reasonable jury could conclude that Wells Fargo knew or should have known about the co-worker's acts of harassment particularly, but not exclusively, as relates to the monkey sounds on multiple sales calls, and it failed to take appropriate remedial action.

---

[37] "The employer is essentially strictly liable if the employee's supervisor created the hostile work environment." *Fulmore*, 2006 U.S. Dist. LEXIS 22923, *52 (citing *Mason v. So. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). "Where the harasser is a co-worker, the plaintiff must show that the employer was negligent in either discovering or remedying the harassment." *Id.*

## X.  CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment, in its entirety, and grant Mr. Nabors all other just and proper relief under the circumstances.

Respectfully submitted,

**HALL & GOODEN LLP**

/s/  Tiffany L. Gooden_____
Scott Hall, Esq. (12060-49)
Tiffany L. Gooden, Esq. (24199-02)
810 South Calhoun Street, Suite 100
Fort Wayne, Indiana 46802
Telephone: (260) 422-2035
Facsimile:  (260) 424-2541
Email: shall@hallgooden.com
         tgooden@hallgooden.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document has been served on this 21th day of December, 2012, by electronically filing the same with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following counsel of record:

Alejandro Valle, Esq.
GONZALEZ SAGGIO & HARLAN LLP
135 N. Pennsylvania Street, Suite 1740
Indianapolis, IN 46204
alejandro_valle@gshllp.com

/s/   Tiffany L. Gooden____ _____
Tiffany L. Gooden