## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| RONALD E. NABORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Cause No.: 1:11-CV-273** |
| | ) | |
| WELLS FARGO A/K/A | ) | |
| WELLS FARGO BANK, | ) | |
| NATIONAL ASSOCIATION AND | ) | |
| WELLS FARGO INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by defendant Wells Fargo Bank (docket at 30). Defendant filed a brief in support of its motion (docket at 35), plaintiff Ronald E. Nabors filed a response in opposition (docket at 38), and defendant filed a reply brief (docket at 49). Also before the Court are two motions to strike–one filed by plaintiff (docket at 40) and one filed by defendant (docket at 46). For the reasons discussed below, the motion for summary judgment is GRANTED as to plaintiff's claims under the ADA and the ADAA; plaintiff's claims of religious discrimination under Title VII; plaintiff's claims of sex/gender discrimination under Title VII; and plaintiff's claims for retaliation. The motion for summary judgment is DENIED as to plaintiff's claims for age discrimination under the ADEA, and plaintiff's claims of race discrimination under Title VII and 42 U.S.C. § 1981. In addition, plaintiff's motion to strike is DENIED and defendant's motion to strike is DENIED.

## FACTUAL BACKGROUND

Nabors, an African-American male who was 65 years old when he was terminated by Wells Fargo, filed his complaint in this case asserting several claims for relief against Wells

Fargo.  He alleges as follows:

> Mr. Nabors brings this action against his former employer, Wells Fargo, to redress deprivation of his civil rights and to remedy Wells Fargo's discrimination and retaliation against him on the basis of his race/color, religion/religious beliefs, sex, age and his disability/perceived disability/record of impairment, and to remedy Wells Fargo's retaliation relative to his wages, terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., including the Americans with Disabilities Amendments Act of 2008 (collectively referred to herein as "ADAA").

Complaint, docket at 1, pp. 1-2.

The panoply of claims asserted against defendant stem from Nabors' employment with Wells Fargo, which began in August of 2004 and continued until "on or about October 18, 2010[.]" *Id*., p. 3.  At the time Wells Fargo terminated Nabors' employment he was serving "as the Vice President and Regional Sales/Branch Manager for the Chicago, St. Louis, Ohio[,] and Indiana areas." *Id*.  Nabors states that he "reported directly to Dennis Thonvold (white male), Senior Director of Brokerage, Chip Flannagan (white male), Senior Vice President and Regional Director, and Gary Schlenker (white male), Human Resource Consultant for Wells Fargo." *Id*. Also, "[f]rom approximately March 2010 through the date on which Wells Fargo terminated his employment, Mr. Nabors also reported directly to Howard Williams (white male), Senior Vice President and Regional Director for Wells Fargo." *Id*., p. 4.

Nabors alleges that from December 2009 through February 2010 he made several verbal and written complaints to his superiors, including Thonvold, Flannagan and Schlenker, among others, concerning "several concerns he had regarding incidents that contributed to him being subjected to a hostile work environment or otherwise being discriminated or retaliated against by

2

Wells Fargo." *Id*.  These incidents included such things as e-mail communications that Nabors felt were racially charged or racially hostile; allegations that he was discriminated against after sharing with certain of his superiors "information regarding his serious health condition and other impairments . . ."; allegations that he was told not to be demonstrative about his devout Christian beliefs while a white female employee was not disciplined for similar behavior; allegations that he was terminated and not permitted to resign "despite being 65 years of age . . ."; and allegations that he was disciplined and/or terminated for allegedly failing to supervise a Wells Fargo broker named Mark Cubic "who had allegedly engaged in inappropriate trading and otherwise violated Wells Fargo policy" even though a younger white male, Howard Williams, had approved the manner in which Nabors handled the situation with Cubic; allegations that Cubic himself, also a younger white male, was given an opportunity to resign rather than be terminated by Wells Fargo; and allegations that a younger white female Branch Administration Manager who was also responsible for overseeing broker activity was not terminated as a result of the situation with Cubic.  *Id*., pp. 4-8.  On December 16, 2009, Nabors claims he "suffered an adverse employment action when he received a final written notice about his job performance . . . without having received any prior disciplinary write-ups or other disciplinary action and despite performing at or above the levels that led Mr. Nabors' Chicago, St. Louis, Ohio[,] and Indiana region to earn one of the highest performance percentages at that time in the Great Lakes region."  *Id*., p. 5.  Nabors was fired on October 18, 2010, and claims that his termination was based on his race, his religion, his sex, his age, and his disabilities or perceived disabilities.  *Id*., p. 8.  More facts underlying this action will be discussed in greater detail below as they become relevant to the Court's analysis of Nabors' claims and Wells Fargo's defenses.

3

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex,* 477 U.S. at 323, 325, 106 S.Ct. 2548; *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 n.

3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.,* 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum–Hill Assoc.,* 914 F.2d 107, 110–111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed.R.Civ.P. 56(e); *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56©, the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it. . . ." Fed.R.Civ.P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Srail v. Vill. of Lisle,* 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid–Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

The summary judgment standard is applied rigorously in employment discrimination cases because intent and credibility are such critical issues and direct evidence is rarely available.  *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996).  To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

# DISCUSSION[1]

## 1. Age Discrimination Claim.

In its brief in support of its motion for summary judgment, Wells Fargo argues as a threshold matter that Nabors "must abandon either his age discrimination claim, or his other claims, because he cannot pursue both an age claim and a claim based on any other discrimination concurrently. This is so, because, for his age claim, Plaintiff is required to establish that Wells Fargo would not have taken its actions 'but for' his age. *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Showing a mixed motive is not enough; Plaintiff must

_____

[1] At the outset of their respective briefs, the parties argue about whether the Court can consider evidence of certain acts Nabors claims took place during his tenure at Wells Fargo. Wells Fargo argues that since Nabors filed his charge of discrimination with the EEOC on November 16, 2010, the Court should not consider any evidence of such acts if they "predat[e] January 21, 2010." Defendant's Memorandum, p. 1. Wells Fargo points out, correctly, that Title VII "provides that a charge of discriminatory employment practices shall be filed with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.' Failure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII." *Id.*, pp. 1-2 (citing *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005)). Nabors responds by arguing that "Title VII does not bar an employee from using the prior acts as background evidence in support of a timely claim." Plaintiff's Response, pp. 3-4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Nabors also invokes the "continuing violation doctrine," and claims that this Court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, . . . for purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.'" *Id.*, p. 4 (citing *Everson v. City of Madison*, 672 F.Supp.2d 881, 885 (W.D. Wisc. 2009)). Both parties present correct statements of the law, although the applicability of those statements to the facts in this case is questionable. Nabors asserts many claims in this case, some of which involve issues of an allegedly hostile work environment (like his race claims) and some which do not (like his ADA claims and retaliation claims). But while some of the acts and events Nabors refers to in his pleadings may have taken place outside the limitation period with regard to the filing of a charge of discrimination, they remain simply that–acts and events–and are not "claims" in and of themselves. In any event, the Court's discussion, analysis and conclusions, as set forth in this order, were not impacted by Nabors' recitation of certain events that may have taken place outside the 300-day limitations period. The Court's reasoning, it is hoped, will become clear as the issues in this case are discussed below.

show that age was the _only_ factor taken into account by Wells Fargo."  Defendant's
Memorandum, p. 1 (emphasis in original).  In addition to the _Gross_ case, Wells Fargo cites
district court cases from Alabama, Pennsylvania and West Virginia, as well as a Third Circuit
case, in support of this argument.

Nabors responds to this position by arguing that "Wells Fargo's reliance on its cited
district court cases outside of the Seventh Circuit is misguided, at best, because in the Seventh
Circuit, 'but for' _does not_ equate to 'only' or 'sole' factor.  Thus, despite Wells Fargo's
argument to the contrary, it is clear that Mr. Nabors can concurrently maintain his age claim and
other claims at this summary judgment stage."  Plaintiff's Response, p. 3 (italics in original).  In
support of his position and interpretation of the holding in _Gross_, Nabors cites, _inter alia_, _Girten
v. Town of Schererville_, 819 F.Supp.2d 786, 803 (N.D. Ind. 2011) ("plaintiff's diabetes need not
be the sole cause of his termination to be the but-for cause), _United States v. Hatfield_, 591 F.3d
945, 948 (7th Cir. 2010) ("but-for" cause defined as a "necessary condition"), and _United States
v. Dyer_, 216 F.3d 568, 570 (7th Cir. 2000) ("'But-for' causation is a very weak sense of
causation" and "[i]t is poles apart from 'sole cause'").  _Id._, n. 4.[2]

In the _Gross_ case, the Supreme Court indeed held that a plaintiff in an age discrimination
case must prove to a jury that his or her age was the "but-for" cause of an adverse employment
action, and not simply a motivating factor.  _Gross_, 557 U.S. at 177.  However, the Court did not
address how, if at all, this holding would impact a plaintiff's other claims against an employer,
such as Title VII claims.  Obviously Wells Fargo takes the position that the holding in _Gross_

---

[2] Wells Fargo does not address this argument again in its reply brief, although it also does
not explicitly abandon it.  Its entire argument concerning Nabors' ability to pursue his age claim
along with his other claims is limited to the first paragraph of Wells Fargo's opening brief.

means that if a plaintiff establishes that he was terminated because of his age, he cannot also assert that he was terminated because of his race, religion, sex or for any other illegal reason. In other words, if a plaintiff's age was the determining factor in an employer's decision to take an adverse employment action, then it stands to reason that the plaintiff's race, or age, or sex, or disability, were *not* the reasons for that action.

This Court does not find Wells Fargo's argument convincing and the cases defendant cites from other districts are not persuasive and, obviously, not binding on this Court. Wells Fargo does not explicitly state that this argument is a basis for granting summary judgment. The company merely asserts that Nabors should choose between his age claim and all his other claims. However, to the extent that this argument could be interpreted as a basis for summary judgment it is denied.

Having dispensed with that initial argument, the Court turns to a broader discussion of Nabors' age discrimination claim. It is well established that a plaintiff asserting an age discrimination claim can present direct evidence of age discrimination, or sufficient evidence to establish a *prima facie* case under the burden-shifting method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That method requires proof that Nabors belonged to a protected class, was meeting Wells Fargo's legitimate job expectations, had suffered an adverse employment action, and was treated worse than similarly situated employees outside the protected class. *Id.*; *Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 477 (7th Cir. 2010). In this case, Nabors utilizes the burden-shifting method to establish his ADEA claim.

Wells Fargo argues that Nabors cannot sustain his age claim because, according to the defendant, he "was not meeting Wells Fargo's legitimate expectations . . . that any and all proposed comparators are not similarly situated . . . [and] that Plaintiff did not experience an adverse action with regard to his Final Written Notice . . ."  Defendant's Memorandum, p. 13. Defendant maintains, as set forth above, that Nabors was terminated for a legitimate, non-discriminatory reason, that is, his alleged failure to supervise Cubic properly.

Nabors counters by claiming that he was never disciplined or "written up" before December 2009, that the region he was charged with overseeing was performing at or above the level of other regions, that substantially younger, similarly situated employees were treated more favorably, and that he suffered an adverse job action when he was terminated.  He also alleges that Wells Fargo's purported reason for firing him was pretextual.

It is undisputed that Nabors was never "written up" or otherwise disciplined during his time at Wells Fargo prior to the time he was given his December 16, 2009, "Final Written Notice."  The evidence demonstrates that, with the exception of his allegedly faulty supervision of Cubic, Nabors was performing his job satisfactorily.  And, while the written notice he received may not have constituted an adverse job action since it did not impact the terms or conditions of his employment, he certainly suffered an adverse action when he was terminated some 10 months later.[3]

In addition to the fact that he never received any write-ups or other disciplinary actions prior to December 2009, Nabors notes that "even assuming, *arguendo*, that Mr. Nabors'

---

[3] Wells Fargo "does not dispute, of course, for purposes of this Motion, that Plaintiff's termination constitutes an adverse action."  Defendant's Memorandum, p. 5.

purported failure to supervise Cubic placed Wells Fargo at regulatory risk, the Seventh Circuit

has created a narrow exception excusing plaintiffs from showing that they met their employer's

legitimate expectations 'when a plaintiff alleges that other employees were also not meeting the

employer's expectations but the employer selectively punished the plaintiff, or punished the

plaintiff more severely, for discriminatory reasons.'  Such an exception applies to this case."

Plaintiff's Response, p. 7 (citing, *inter alia*, *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329

(7th Cir. 2002) (plaintiff need not show that he was meeting his employer's expectations when

plaintiff alleges that expectations themselves are being applied in a discriminatory manner)).

According to Nabors, this was precisely the situation at Wells Fargo.  He states as follows:

> [I]f Mr. Nabors was purportedly not meeting Wells Fargo's legitimate
> expectations as a result of his purported failure to supervise Cubic . . . who
> allegedly violated Wells Fargo policy by engaging in unauthorized and/or
> questionable trade practices which placed Wells Fargo at regulatory risk, then
> [other] Regional Brokerage Managers . . . Rodney Vucenich . . . Jeffrey Carpenter
> . . . and Kurt Bakken . . . were also not meeting Wells Fargo's job expectations.
> Yet, Wells Fargo selectively punished Mr. Nabors by firing him while Vucenich,
> Carpenter, and Bakken were never disciplined in any way, let alone discharged
> for failing to supervise their respective [employees] over whom each served as
> direct supervisor while said [employees] violated Wells Fargo policy by engaging
> in unauthorized and/or questionable trade practices for months . . ."

*Id.*, n. 14.

Wells Fargo claims that Nabors is focusing too closely on the issue of his supervision (or

alleged lack thereof) of Cubic and ignoring the fact that he "received a Final Written Notice for

violating the Company's policies, based on a host of incidents of unacceptable conduct."

Defendant's Memorandum, p. 4.  Nabors, however, points out that "even taking into account the

2009 December Notice [sic], Wells Fargo admitted during depositions that with respect to Mr.

Nabors' job performance for the entirety of 2009, he 'met all and may have exceeded some key

objectives' and, as such, he was adequately and satisfactorily performing his job responsibilities."  Plaintiff's Response, pp. 6-7 (citing Plaintiff's Appendix, Flannagan Deposition, pp. 80-82 and Thonvold Deposition, pp. 123-128).

This dispute over Nabors' job performance cannot be resolved on summary judgment.  It is undisputed that Nabors received the write-up in December of 2009.  But it is also undisputed that he never received any prior write-ups and that at least some Wells Fargo employees testified that he was meeting or exceeding most of his performance goals.  This results in a quintessential credibility issue that can only be resolved by the trier of fact.  And, Nabors argues that younger men who also supervised errant brokers were not terminated.  For these reasons, Wells Fargo's motion for summary judgment on Nabors' age discrimination claim is DENIED.[4]

## 2. Disability Discrimination Claim.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual" with regard to the terms and conditions of the individual's employment.  42 U.S.C. § 12112(a).  The burden is on a plaintiff to prove that he is

---

[4] Wells Fargo argues that Nabors' age claim also fails because "during the relevant time period, Mr. Williams was sixty (60) years old, Mr. Carpenter was fifty-four (54) years old, Mr. Bakken was forty-six (46) years old[,] and Mr. Vucenich was forty-two (42) years old.  These individuals, at least, are therefore also members of the same protected age class as Plaintiff, and cannot be proper comparators."  Defendant's Memorandum, p. 13, n. 7.  Wells Fargo cites no authority for this position.  It is well established, however, that "there is no requirement comparators be outside the protected class. . . . Comparators in an age discrimination case are persons 'substantially younger' than the plaintiff, regardless of whether they too are members of the protected class (that is, those age 40 and over)."  *Wimmer v. Indiana Masonic Home, Inc.*, 2013 WL 2467994 * 11 (S.D. Ind. June 7, 2013) (internal citations omitted).  The Seventh Circuit has held that "a ten-year difference in ages (between the plaintiff and his [comparators]) [is] presumptively 'substantial.'" *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997).  Accordingly, with the exception of Williams, most of the comparators Nabors refers to are, in fact, "substantially younger."

a "qualified individual," under the ADA, i.e., that he is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that he holds or desires."  42 U.S.C. § 12111(8).[5]

　　　　To establish a *prima facie* case of discriminatory discharge in violation of the ADA, a plaintiff must prove that he: (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment."  *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

　　　　In addressing Nabors' disability claim, Wells Fargo begins by reiterating that it "already established that Plaintiff was not meeting Wells Fargo's legitimate expectations; that any and all proposed comparators are not similarly situated; that Plaintiff did not experience an adverse action with regard to his Final Written Notice; and that Wells Fargo had legitimate, non-discriminatory reasons for its alleged adverse actions with regard to Plaintiff . . ."  Defendant's Memorandum, p. 15.  The Court has already discussed, and rejected, Wells Fargo's positions with regard to Nabors' job performance and whether he suffered an "adverse employment action."  In any event, Wells Fargo focuses its summary judgment argument regarding plaintiff's ADA claim by claiming that the fact that Nabors suffered from an enlarged prostate and underwent prostate cancer screening (which, thankfully, was negative) did not constitute an

---

　　　　[5] Wells Fargo acknowledges "that the ADA was amended, effective January 1, 2009 (the "ADAA"), and that the ADAA expands, among other things, the definitions of 'qualified individual with a disability' and 'regarded as' disabled."  Defendant's Memorandum, p. 14, n. 8. Nonetheless, Wells Fargo maintains that "even under the ADAA, Plaintiff cannot establish that he is entitled to relief under the statute."  *Id.*

13

"impairment" under the ADA.  *Id*.[6]  Therefore, Wells Fargo argues, Nabors cannot sustain his ADA claim.

Under the ADA, a plaintiff must establish that he is disabled within the meaning of the statute.  This means proving (or at this point–raising a fact issue) that he: (1) has a physical impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded by his employer as having such an impairment.  *Majors v. General Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (citing 42 U.S.C. § 12102(1)).  Wells Fargo argues that "the record is devoid of any evidence whatsoever that Plaintiff's enlarged prostate is a physical impairment of the type protected by law, let alone one that substantially limits one or more of Plaintiff's major life activities."  Defendant's Memorandum, p. 15.  Additionally, Wells Fargo points out as follows:

> . . . [A]n individual is "regarded as" disabled only if he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  However, Plaintiff has failed to adduce any evidence whatsoever that anyone at Wells Fargo perceived him as having a physical or mental impairment.  Indeed, Plaintiff informed Messrs. Thonvold, Schlenker, and Flannagan only that he was undergoing some medical testing, without providing more detail, and has failed to proffer any further evidence to establish that any of these individuals took any action against him because they perceived same to be a substantially limiting impairment.

*Id*., p. 16.  Nabors bases his ADA claim on a shaky foundation, to say the least.  He argues in response that "shortly before Mr. Nabors received the December 2009 Notice, he expressed to Wells Fargo (through Schlenker, Flannagan and Thonvold) that he noticed blood in his urine and

---

[6] Nabors also suffered from diabetes and high blood pressure, but Wells Fargo concedes that these ailments can constitute disabilities within the meaning of the ADA.  Defendant's Memorandum, p. 15.

that he was concerned that his enlarged prostate was cancerous." Plaintiff's Response, p. 19. Curiously, Nabors notes in a footnote in his brief that "Thonvold testified that Mr. Nabors mentioned that he was going through some prostate screening and that was it[.]" . . . and that "Flannagan testified that he had no knowledge that Mr. Nabors may suffer from cancer; that Mr. Nabors did not inform him that certain medical examinations and/or test results revealed that he may suffer from prostate cancer; that he does not recall Mr. Nabors informing him of an issue involving blood in his urine; that he only recalls that toward the end of 2009, Mr. Nabors informed him that he was going to Chicago to have some high level medical tests done, but Flannagan was not sure about the nature of the tests." *Id.*, p. 19-20, n. 31. This admission (although it may not have been intended as an admission, but rather, as proof that Nabors did in fact communicate *something* about his condition to Wells Fargo) not only fails to bolster Nabors' ADA claim, but significantly diminishes the strength of his argument. This is the entire basis of Nabors' argument regarding whether Wells Fargo perceived him as disabled.

Nabors also asserts that Wells Fargo failed to provide him a reasonable accommodation once they found out (to the extent that they even did) that he might have been suffering from a prostate ailment. He says this failure to accommodate is evidenced by the fact that Wells Fargo refused his "request to postpone the December 16, 2009 meeting in Chicago in light of his enlarged prostate and related complications (i.e.–blood in his urine and related symptoms)." *Id*., p. 20. But as stated, Wells Fargo claims that it had no notice of Nabors' alleged disability, or at least a very vague notice, and so no duty to accommodate was ever triggered. Nabors attempts to retort by arguing that "a jury could reasonably conclude from the record viewed in the light most favorable to Mr. Nabors that *he did make Wells Fargo aware* of his enlarged prostate,

thereby satisfying his aforementioned duty and triggering Wells Fargo's duty to engage in the interactive process." *Id*. (italics in original). This is the extent of Nabors' proof that he informed Wells Fargo of his alleged disability and that Wells Fargo failed to accommodate that disability.

The Court concludes that Nabors has failed to establish that he was a qualified individual with a disability or that he was perceived as having a disability. Aside from saying that his prostate caused him occasional problems with urination, he presents no evidence that his problems rose to the level of impairing a major life activity. Furthermore, he fails to present evidence that would support an inference that his alleged disability was a motivating factor in his termination. Based on the record before the Court, no reasonable jury could conclude that Nabors met his burden of proving his claim under the ADA. For these reasons, Wells Fargo's motion for summary judgment as to Nabors' claims under the ADA and the ADAA is GRANTED.

### 3. Religious Discrimination Claim.

Nabors claims that he has sufficient evidence to support his claim that he was discriminated against on the basis of his religion (Christianity). His claim of religious discrimination is set forth in his Complaint as follows:

> Thonvold, Flannagan and Schlenker, as well as others at Well[s] Fargo knew of Mr. Nabors' Christian faith and beliefs. When asked about his Christian beliefs and faith, Mr. Nabors has not denied that Jesus Christ is his personal Lord and Savior. Moreover, Mr. Nabors silently prayed over his food or blessed his food. If someone near him sneezed, he sometimes said 'Bless you.' It was also not unusual for Mr. Nabors to keep a bible in his office drawer or cabinet at Wells Fargo. All of these things were consistent with Mr. Nabors' religious beliefs and his Christian faith, but never interfered with his work and were never injected by him into his work.

Complaint, pp. 5-6. Nabors claims that he was "negatively treated and adversely impacted"

because of his acts of religious expression. *Id.*, p. 6. Yet, he alleges, Wells Fargo "permitted a white female senior leader at Wells Fargo, Ms. Mack, during a large company meeting/conference, to seek from all those in attendance prayer for an individual and his family." *Id.* Nabors alleges that Mack was never disciplined for her actions. *Id.*

A plaintiff pressing a claim for discrimination on the basis of religious beliefs, like other claims pursuant to Title VII, can present direct evidence of said discrimination or utilize the burden-shifting method. *Martino v. Western & Southern Financial Group*, 2013 WL 1760456 * 4 (7th Cir. April 25, 2013). In this case, Nabors claims that he "can establish religious discrimination through the direct method." Plaintiff's Response, p. 10. He attempts to do so by explaining that Wells Fargo employees Lori Whitehead, Schlenker, Thonvold, and Flannagan "made religion a factor in the workplace by interrogating Mr. Nabors about: i) whether he silently prayed over his food at lunch; ii) whether he said 'God bless you' after someone sneezed; iii) whether and how he responded to other Wells Fargo team members who may have inquired about spiritual matters; and iv) his biblical beliefs as applied to the manner by which he conducted himself at work. . . . Wells Fargo explicitly and repeatedly judged and harassed Mr. Nabors because when asked, he did not deny that Jesus Christ is his personal Lord and Savior . . . and he lived a 'Godly lifestyle[.]'" *Id.*, p. 11. Nabors concludes by stating that "[a]s a result of Mr. Nabors' religion/religious beliefs (as manifested through the aforementioned religious expression), Mr. Nabors received the 2009 December Notice [sic] and his employment was subsequently terminated." *Id.* Nabors mentions very little in his brief about Mack, who allegedly sought prayers from other employees at a company meeting but was never disciplined for it. However, in his appendix, which includes his statement of genuine issues and disputed

facts, Nabors explains that Mack, a senior Wells Fargo employee, while addressing a large contingent of fellow employees, asked everyone present to keep a fellow employee who was unable to attend in "their thoughts and prayers."  Plaintiff's Appendix, docket at 39, p. 40.  For what it is worth, Nabors indicates in his appendix that he disputes the fact that she included the word "thoughts" in her request.  He also claims that her actual words were "let's all pray for him."  *Id.*  It is undisputed that Mack was not disciplined.  Wells Fargo claims that this is because they never received any complaints about the remark and considered it an attempt to "send good vibes" to a fellow employee, not an explicit request that anyone pray at that moment nor an attempt to infuse religion into the workplace.  *Id.* (citing deposition excerpts).  This is the extent of Nabors' evidence supporting his religious discrimination claim.

Wells Fargo's argument that it is entitled to summary judgment on this claim is brief. Wells Fargo asserts that Nabors' claim must fail because "no employees outside of his religion were treated more favorably."  Defendant's Memorandum, p. 7.  Wells Fargo argues that "Since Plaintiff cannot identify any similarly situated Wells Fargo employee outside of his alleged religious class–nor is the Company aware of any–who held the same position, had the same job duties, and engaged in the same conduct, in the same set of circumstances and without any differentiating/mitigating circumstances, who was treated more favorably than the Plaintiff, Wells Fargo is entitled to summary judgment on Plaintiff's religious discrimination claims."  *Id.*, pp. 7-8.  Aside from urging this Court to adopt an overly narrow interpretation of "similarly situated" employees (which Wells Fargo does throughout its briefing as to all of plaintiff's Title VII claims), defendant offers little more in the way of argument. And, in any event, this argument does not apply to Nabors' religious discrimination claim since he employs the direct

18

evidence method to attempt to establish his claim, not the burden-shifting method (in which case he *would* have to present evidence that similarly situated employees were treated more favorably.  Wells Fargo does offer a bit more argument and factual detail in a footnote in its reply brief, when it explains as follows:

> . . . Wells Fargo legitimately <u>investigated</u>–not interrogated–Plaintiff based on employee complaints regarding his pattern of <u>inappropriate</u> faith-based conduct in the workplace that was prohibited by Company policies[.] . . . Plaintiff also fails to explain how he was allegedly "explicitly and repeatedly judged and harassed" based on religion, because there is simply no evidence in the record that would support such an argument.  This is certainly not evidence that points directly to any unlawful discrimination by Wells Fargo.

Defendant's Reply, p. 9, n. 16 (emphasis in original).  Furthermore, Wells Fargo points out that when Lori Whitehead, a Wells Fargo human resources executive, conducted an investigation into complaints lodged against Nabors by other employees (more on this later), it was discovered that some Wells Fargo employees complained that Nabors infused religion into the workplace by referencing religion, engaging in inappropriate discussions of religion, and directed or suggested that employees read certain bible passages, among other non-religious based complaints.  Plaintiff's Appendix, p. 34 (referencing excerpts of depositions of Whitehead, Thonvold, Schlenker, and Flannagan).

Under the direct method of proof of a Title VII claim, a plaintiff must "present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." *Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir. 2011).  In this case, Nabors fails to even come close to garnering sufficient circumstantial evidence to permit a jury to infer that a religiously based animus motivated Wells Fargo to terminate him.  Wells Fargo claims that its internal

investigation revealed that Nabors allegedly engaged in several instances of inappropriate religious discussion in the workplace.  These violations of company policy were part of what led to the issuance of the Final Written Notice issued to Nabors.  Nabors offers little to nothing to rebut these facts.  He simply argues that a Wells Fargo executive, on one occasion, referencing a fellow employee who was apparently enduring some sort of hardship, suggested that everyone present keep that individual in their thoughts and prayers (or, as Nabors claims, suggested that people may wish to pray for that individual).  It is undisputed that this incident occurred, although the parties dispute Mack's exact words.  It is also undisputed that she was not disciplined or admonished by Wells Fargo.  But this falls far short of the sort of direct evidence that would support a religious discrimination claim.  Just as importantly, even when the facts are viewed in a light most favorable to Nabors, he wholly fails to present any evidence whatsoever that these "religious" incidents motivated Wells Fargo to terminate his employment.  Instead, he merely concludes that this was the case.  But of course, "[i]t is well settled that conclusory allegations and self-serving [statements], without support in the record, do not create a triable issue of fact."  *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002).  This is the case with regards to Nabors' Title VII religious discrimination claim.  For these reasons, Wells Fargo's motion for summary judgment on this claim is GRANTED.

### 4.  Race Discrimination Claims.

Nabors' asserts race discrimination claims under Title VII and 42 U.S.C. § 1981.  Specifically, Nabors alleges as follows:

> A Caucasian female named Ann Perri "made the initial complaint that served as a catalyst for the investigation/fact-finding concerning Mr. Nabors' 2009 December Notice [sic]. . . . Perri's complaint was about her perceived lack of fairness

concerning Mr. Nabors' redistribution of a book of business of departed brokers. . . . Even though Wells Fargo had no policy or procedures in place at that time to specifically direct anyone on how to redistribute departing brokers' assets, Wells Fargo purportedly considered Perri's allegation serious enough to conduct an investigation that included a massive fact-finding consisting of interviews with twenty (20) Wells Fargo team members, past and present. . . . Curiously, however, Perri's complaint against Mr. Nabors that contributed to the investigation/fact-finding and purportedly led to the 2009 December Notice [sic] was made *after* Mr. Nabors had already complained to Wells Fargo (through its Human Resources . . . Consultant, Gary Schlenker . . ., and others, including his supervisor, Dennis Thonvold . . . about the racially derogatory and inflammatory e-mail that Perri had received from he father pertaining to the mixed raced [sic] of then President-Elect Obama, and *after* Mr. Nabors had addressed Perri directly regarding the same. . . . Furthermore, in stark contrast to how it handled Perri's complaint against Mr. Nabors . . . Wells Fargo conducted zero interviews and otherwise conducted no follow-up on Mr. Nabors' prior complaint to Schlenker and Thonvold about Perri, which he made in accordance with reporting procedures outlined in Wells Fargo's Harassment Policy.

. . .

It is also important to note that at the time the fact-finding was being conducted concerning Mr. Nabors, . . . Flannagan . . . along with Thonvold, issued the [Final Written Notice] [while he had] concerns about Perri's lack of honesty with respect to certain allegations that she had previously made against him and Mr. Nabors. . . . One (1) or two (2) weeks before Flannagan gave Mr. Nabors the . . . Notice, Flannagan knew that Perri was the individual who had made the complaint against Mr. Nabors, prompting the fact-finding. . . . Yet Flannagan chose to not disclose to Lori Whitehead (who led the fact-finding, with the assistance of Schlenker) relevant information regarding Perri's prior lack of honesty.

Plaintiff's Response, p. 6, n. 12 (italics in original) (citing excerpts of depositions of Schlenker, Flannagan, and Thonvold).

Nabors also claims that, in addition to Perri, other white employees were treated more favorably. He states that Vucenich, Carpenter, and Bakken "were all supervised by the same individual, Thonvold . . . As [Regional Branch Managers] in the Great Lakes Region, [all four men] were all subject to the same standards as Mr. Nabors. . . . Furthermore, they all engaged in

similar conduct of directly supervising their respective [brokers] who Wells Fargo found to have violated its policy by engaging in unauthorized and/or questionable trade practices." *Id.*, pp. 9-10.  Nabors points to the fact that "Vucenich, Carpenter and Bakken were never disciplined in any way, let alone discharged for failing to supervise their respective [brokers.] Plaintiff's Response, p. 7, n. 14.

Wells Fargo responds to Nabors' race claims by utilizing the same arguments it employs with respect to his other claims.  That is, that Nabors "cannot establish that he met legitimate job expectations" and therefore cannot sustain his burden of establishing a *prima facie* case of race discrimination.  Defendant's Memorandum, p. 3.  But the Court has already concluded that there is a genuine issue of fact on this point.  Wells Fargo also maintains that "no similar employees of another race were treated more favorably." *Id.*, p. 5.  Wells Fargo also argues that Vucenich, Carpenter, and Bakken are not proper "comparators" because they "all supervised [a broker] who engaged in *unauthorized* discretionary trading, which is a different offense than Mr. Cubic's *excessive* churning activities." *Id.*, p. 6 (italics in original).[7]  Wells Fargo elaborates on this argument by claiming that "all three . . . of the proposed comparators were significantly involved in the oversight and investigation of their respective [brokers] activities, unlike Plaintiff.  They acted promptly once the questionable trade activity was brought to their attention, remaining fully engaged in their respective investigations . . ." *Id.*, pp. 6-7.  But this argument fails from the start, in terms of a motion for summary judgment.  If Wells Fargo's contention is correct,

---

[7] This contention is difficult to understand.  Wells Fargo implies that Cubic's trading offenses were "excessive" while the other brokers' activities were merely "unauthorized." Perhaps this is true, but the technical or semantic distinction is irrelevant for purposes of the motion for summary judgment.  A jury must determine if this distinction is material.

then it has a valid defense to Nabors' race claims.  If not, a jury could find that race was a

motivating factor in Nabors' termination, since similarly situated white employees were not

disciplined or terminated after experiencing problems with brokers under their supervision.  This

issue can only be resolved by a jury.  Nabors says he was railroaded with respect to his alleged

failure to supervise Cubic properly, while Wells Fargo claims he failed in his supervisory duties.

This is a quintessential "swearing match" and the Court would be forced to weigh the evidence

and/or make credibility determinations to resolve this factual dispute at this point, which is

obviously improper.  For these reasons, Wells Fargo's motion for summary judgment as to

Nabors' Title VII and Section 1981 race claims is DENIED.

### 5.  Gender Discrimination Claim.

Nabors also contends that his gender was a motivating factor in his termination.  He

claims that two other Wells Fargo employees, Ms. Mack and Diana Carroll, were treated more

favorably by the company.  Mack was the woman who told a gathering of Wells Fargo

employees to keep an absent colleague in their "thoughts and prayers" (or words to that effect).

Carroll was a Branch Administration Manager II and reported directly to Nabors.  Plaintiff's

Appendix, docket at 39, p. 14.  Nabors claims that Carroll was treated more favorably than he

because of the following facts:

> Carroll's primary job function involved identifying and addressing compliance
> matters and she, like Mr. Nabors, was also considered a supervisory principal. . .
> Yet, when meeting in person with Cubic on or about August 6, 2010 (a date on
> which she was already aware that Cubic was suspected of engaging in
> unauthorized and/or questionable trade activity) she purportedly told Cubic that
> she was not worried about him and that it was Mr. Nabors who concerned her.
> She also admitted in her deposition that she joked and otherwise engaged in light-
> hearted conversation with Cubic in this meeting I) that concerned allegations of
> his questionable trade practices and ii) that was a follow-up to Cubic's August 5,
> 2010 e-mail explaining his trade activity at issue. . . . Mr. Nabors made Wells

>Fargo aware of this information concerning Carroll's inappropriate
>communication with Cubic on or about August 6, 2010, but Wells Fargo took no
>disciplinary action against her.

Plaintiff's Response, p. 8, n. 14. So there you have it.  Mack made her religiously based

comment at a conference and was not punished; Carroll apparently took her meeting with Cubic

too lightly, since she admitted to engaging in "light-hearted conversation" with him when she

apparently (from Nabors' perspective) should have conducted herself in a manner more

appropriate for such a serious occasion.  She, too, went unpunished.  Nabors claims that this

evidence establishes at least a *prima facie* case of sex discrimination in violation of Title VII.

The Court disagrees.  It is not necessary to engage in a discussion or analysis of Wells Fargo's

arguments regarding this claim, since Nabors wholly fails to adduce sufficient evidence from

which a jury could find that he was discriminated against on the basis of his gender and his claim

fails as a matter of law.  It is well established that neither the "mere existence of some alleged

factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986),

nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary

judgment.  *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).  In this

instance, the "evidence" Nabors presents in support of his claim of gender discrimination barely

reaches the level of metaphysical doubt, let alone establishing a genuine issue of fact for trial.

"[F]acts, not an employee's perceptions and feelings, are required to support a discrimination

claim."  *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997).  Nabors

believes that Mack's remark at the conference, and Carroll's alleged cavalier attitude during her

meeting with Cubic, warranted discipline and, since none was forthcoming, that constitutes

sufficient evidence to support a claim of sex discrimination.  But the facts are insufficient to support his position.  Accordingly, Wells Fargo's motion for summary judgment on Nabors' Title VII gender discrimination claim is GRANTED.

### 6. Retaliation Claims.

Nabors also alleges that Wells Fargo retaliated against him by issuing the Final Written Notice and terminating his employment after he complained about racially based incidents in the workplace.[8]  Specifically, Nabors alleges that he "reported to Schlenker and Thonvold in September or October 2010 that he was subjected to what he believed to be racist, hurtful and degrading monkey sounds on weekly sales calls and Wells Fargo failed to conduct in investigation or otherwise follow-up Mr. Nabors' complaints which were made in accordance with its Harassment Policy.  Instead, Wells Fargo fired Mr. Nabors a short time after his aforementioned September/October 2010 complaints."  Plaintiff's Response, p. 15.  Wells Fargo argues that Nabors' retaliation claim (or claims, *see* footnote 7 below) cannot survive summary judgment because he "cannot establish any causal nexus" between his complaints and his termination.  Defendant's Reply, p. 10.

It is well established that a plaintiff may establish a claim for retaliation (or, more specifically, raise a fact issue as to such a claim) by demonstrating that he suffered an adverse employment action shortly after engaging in protected activity.  *Lang v. Illinois Dep't of Children & Family Servs.,* 361 F.3d 416, 419 (7th Cir. 2004).  In the instant case, the parties

---

[8] It is unclear whether Nabors intended his retaliation claim to apply to his Title VII race claim or his Section 1981 race claim or both.  But this does not affect the Court's analysis, since retaliation claims brought for alleged violations of Section 1981 are analyzed under the same framework as retaliation claims brought under Title VII. *Chism v. Con-Way Freight, Inc.*, 2009 WL 3111274 * 4 (N.D. Ind. Sept. 24, 2009).

apparently do not dispute that Nabors lodged internal complaints about what he perceived as racially derogatory emails and "sounds" in the workplace.  But Nabors and Wells Fargo apparently disagree on when those complaints were made, and their briefing does nothing to clear up this discrepancy.  As stated, Nabors states that he complained in September or October of 2010, a matter of only weeks before he was terminated.  Wells Fargo states that Nabors lodged his complaints "in January/February 2010 . . ."  Defendant's Reply, p. 10.  Thus, Wells Fargo argues that Nabors' termination was too far removed from his complaints to support an inference of retaliation.  *Id.*[9]

While it is well established that closeness in time between the protected activity and the adverse employment action is evidence of the causal link between the two events, *Lang,* 361 F.3d at 419, it is equally well established that to survive summary judgment, a plaintiff must offer more evidence that supports the inference of a causal link between the two events than simply close temporal proximity.  *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 665 (7th Cir. 2006).  *See also, Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2004) ("suspicious timing, standing alone," does not establish a causal connection).  Wells Fargo argues that Nabors fails to achieve the latter goal, since he presents no evidence of a causal link "simply because his termination took place subsequent to his alleged internal complaint." Defendant's Memorandum, p. 11.

Wells Fargo's position is well taken.  Nabors presents no evidence of a causal link between his internal complaints and his termination, regardless of when he actually lodged those

---

[9] As stated previously in this order, Nabors' Complaint states that his complaints were made between December 2009 and February 2010, which would support Wells Fargo's recollection.  Complaint, p. 4.

complaints.  Instead, he urges the Court to infer such a link based on the totality of facts in this

case as he presents them.  That is, based on all the underlying facts, whether they relate to his

age claim, his race claim, his sex claim, or any other of his claims, the Court should assume a

causal link existed between his complaints and his termination.  The Court declines this

invitation, since Nabors fails to elicit any facts–other than a possible temporal proximity–to

support his claim for retaliation.  For these reasons, Wells Fargo's motion for summary judgment

as to Nabors' retaliation claims is GRANTED.[10]

### 7.  Motions to Strike.

As mentioned at the outset of this order, both sides have filed motions to strike in this

case.  Plaintiff filed his motion first, urging the Court to "strike portions of Defendant Wells

Fargo's Statement of Undisputed Material Facts . . . due to Defendant's failure to comply with

the provisions of Local Rule 56-1 . . . and [Fed.R.Civ.P.] 56(c)(1)(A) . . ."  Plaintiff's Motion to

Strike, docket at 40, p. 1.  Nabors complains that "[a] review of [the] 89 paragraphs of

'undisputed material facts' evidences that the majority of those paragraphs include multiple

sentences of alleged facts, but no citation to any portion of the record in this case except after the

last sentence in the paragraph. . . . Wells Fargo's failure to properly cite to the specific portion of

the record which is claimed to support the 'facts' alleged in each sentence of the 89 paragraphs .

_____

[10] As a housekeeping matter, the Court notes that some vague language in Nabors' brief
and appendix seem to imply that he is also asserting a claim of retaliation under the ADA, based
on Wells Fargo's refusal to cancel a scheduled meeting in Chicago after Nabors told them he
was suffering from prostrate problems.  This claim, if in fact it actually is a claim, fails for much
of the same reasons the Court has just discussed concerning Nabors' retaliation claims under
Title VII and Section 1981.  That is, he presents no evidence of such retaliation and his claim is
based on nothing more than his own conclusory allegation.  To the extent Nabors is asserting a
retaliation claim under the ADA, summary judgment is hereby GRANTED in favor of Wells
Fargo on that claim.

. . is contrary to the standards applicable to motions for summary judgment and should result in the offending sentence being stricken, and therefore, not included for purposes of the Court's consideration of Wells Fargo's Motion for Summary Judgment."  Memorandum in Support of Motion to Strike, docket at 41, p. 2.

In its own motion to strike, Wells Fargo asks the Court to "strike portions of [Nabors'] Deposition Errata Sheet and Declaration," which he included in his appendix, since plaintiff "improperly cites to portions of his Deposition Errata Sheet which impermissibly, materially and substantively alter his sworn deposition testimony; and . . . plaintiff improperly cites to portions of his Declaration that do not have any foundation and are not supported on any legitimate basis, including by Plaintiff's own personal knowledge and/or observation."  Defendant's Motion to Strike, docket at 46, pp. 1-2.

The issues raised by each side in their respective motions to strike are insignificant.  In the first instance, the Court's discussion, analysis, and conclusions in this order were not skewed by any alleged technical defects in the materials filed by the parties and included in their appendices.  Second, the disputes presented by each side in their motions to strike bring to mind the saying *de minimis non curat lex* ("the law does not concern itself with trifles").  While each side arguably has a point about the manner in which the other has presented certain portions of their supporting documents, and whether those submissions strictly comply with this Court's Local Rules and/or Fed.R.Civ.P. 56, they amount to much ado about nothing and warrant no further discussion.  The motions to strike are both DENIED.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by defendant Wells Fargo is GRANTED as to plaintiff's claims under the ADA and the ADAA; plaintiff's claims of religious discrimination under Title VII; plaintiff's claims of sex/gender discrimination under Title VII; and plaintiff's claims for retaliation.  The motion for summary judgment is DENIED as to plaintiff's claims for age discrimination under the ADEA, and plaintiff's claims of race discrimination under Title VII and 42 U.S.C. § 1981.  In addition, plaintiff's motion to strike is DENIED and defendant's motion to strike is DENIED.


Date: June 17, 2013.




  /s/   William C. Lee
                              William C. Lee, Judge
                              United States District Court
                              Northern District of Indiana